Opinion issued on March 11, 2004











     




In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00577-CR




MICHAEL MONTE OLIVER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 896765




MEMORANDUM OPINION

          A jury found appellant, Michael Monte Oliver, guilty of possession with intent
to deliver a controlled substance, namely, cocaine, weighing more than four grams
and less than 200 grams and assessed punishment at 12 years’ confinement and a
$4,000 fine. In four points of error, appellant contends that 1) there is legally
insufficient evidence to support the jury’s finding that he had the intent to deliver a
controlled substance; 2) the trial court erred in denying his motion for mistrial, first,
because the prosecution improperly commented on his failure to testify, and, second,
because the prosecution made a material misrepresentation regarding the identity of
a confidential informant; and 3) the trial court erred in permitting prosecutorial
argument that appellant should be convicted on the basis of the character of his
associates. We affirm.
Background
          On December 14, 2001, Houston Police Department [HPD] officers executed
a search and arrest warrant at a house in Harris County, pursuant to information
obtained from a confidential informant used to make a controlled buy at that house
two days earlier. When officers executed the warrant, HPD narcotics officer Kevin
Breen entered the house first. Officer Breen testified that he saw appellant get up
from a chair in the living room, and, that in the built-in cup holder in the arm rest of
appellant’s chair, Officer Breen saw a plastic bag containing what he believed to be
crack cocaine. Officer Breen further testified that appellant had a marihuana cigar in
his hand, and, that he could smell marihuana burning and see smoke “hanging in the
air.” 
          In addition, on a table in the living room, Officer Breen saw a plastic bag of
marihuana and an eyeglass case containing a “cookie” of crack cocaine in a plastic
bag. Officer Breen testified that a dealer would typically cut off sections of a
“cookie” of crack cocaine into smaller pieces for street sale. Connie Dieringer, a
criminalist with HPD’s Crime Laboratory, testified that she tested the evidence
recovered and determined that the baggie found in the cup holder of the chair where
appellant had been sitting contained 4.02 grams of cocaine.


 
          HPD officers located two other co-defendants in the house, Isaac Owens and
Larry Daniels. Owens was crouched down on the floor in the living room, with a
loaded gun next to him. Daniels was found with a crack pipe in his possession in the
back bedroom. Officers also found a second handgun in the back bedroom. A fourth
man, Julian Nelson, testified that he had been in the house earlier that evening, and
that he knew cocaine was being sold from the house.
          Daniels testified that he accepted the State’s plea bargain offer in exchange for
his truthful testimony at appellant’s trial. Daniels testified that on the night of
December 14, 2001, he went to the house because he was looking for a place to stay
and because he had heard that appellant and Owens were selling crack cocaine at the
house. Daniels testified that appellant answered the door when he knocked and that
he told appellant that he wanted a “dime,” meaning that he wanted to purchase $10
worth of crack cocaine. Daniels explained that appellant had a bag with broken up
little rocks and that appellant handed him one of those rocks in exchange for $10. 
Daniels testified that appellant told him he could stay in the back bedroom if he
cleaned up after the puppies. Daniels further testified that approximately 15 minutes
after his arrival, the police entered and executed the search warrant.
          Officer Breen testified that, based on the general condition of the house, it did
not appear that the persons inside were actually living in the house. He further
testified that there were no dishes in the house, no clothing in the closets, and
minimal furniture. Officer Breen explained that there were holes in the walls, and
that, from room to room, through the closets, the sheetrock had been knocked out. 
Officer Breen testified that, with the exception of the crack pipe found on co-defendant Daniels, there was no other narcotic-related paraphernalia around the
house, causing him to surmise that the three people inside were there to sell crack
cocaine, rather than use it themselves.
          Further, Officer Breen testified that it was unusual for a crack user to possess
the quantity of cocaine found in the house. Officer Breen explained that the way the
cocaine was already cut up indicated that it was for sale. Officer Breen also testified
that, based on the manner in which the house was furnished, secured, and being used,
and, the fact that he made a controlled buy at the house two days earlier, he believed
that the cocaine possessed by the suspects was intended for sale.
Sufficiency of the Evidence 
          Appellant contends that the evidence presented at trial was insufficient to
support the jury’s finding that he intended to deliver the controlled substance at issue,
citing the test for legal sufficiency. 
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether a rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Taylor
v. State, 10 S.W.3d 673, 685 (Tex. Crim. App. 2000). The standard is the same for
both direct and circumstantial evidence. Sutherlin v. State, 682 S.W.2d 546, 549
(Tex. Crim. App. 1984).
          To establish unlawful possession with the intent to deliver a controlled
substance, the State must show that (1) a defendant possessed a controlled substance,
 (2) he knew he possessed a controlled substance, and (3) he had the intent to deliver
the controlled substance. Tex. Health & Safety Code Ann. § 481.112 (Vernon
Supp. 2004). The State may prove that a defendant knowingly possessed contraband
by offering circumstantial evidence affirmatively linking him to the contraband. 
Brown v. State, 911 S.W.2d 744, 746-48 (Tex. Crim. App. 1995). A defendant’s
intent to deliver the contraband may also be proved by circumstantial evidence,
including the evidence surrounding its possession. Williams v. State, 902 S.W.2d
505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d); Mack v. State, 859
S.W.2d 526, 528 (Tex.App.—Houston [1st Dist.] 1993, no pet.). Factors courts have
considered include: (1) the nature of the location at which the defendant was arrested;
(2) the quantity of controlled substance in the defendant’s possession; (3) the manner
of packaging; (4) the presence of narcotic paraphernalia (for either use or sale); (5)
the defendant’s possession of large amounts of cash; and (6) the defendant’s status
as a narcotic user. Williams, 902 S.W.2d at 507. 
          Viewing the evidence in the light most favorable to the prosecution, the
evidence established that (1) appellant was arrested in a crack house where, two days
prior, Officer Breen used a confidential informant to make a controlled buy; (2) the
contraband in the cup holder of the chair in which appellant was sitting was positively
tested as cocaine weighing 4.02 grams, and the other baggie of contraband, recovered
from the living room where appellant was located, tested positive for cocaine,
weighing 16.7 grams; (3) Officer Breen testified that 4.02 grams of crack cocaine
could be broken into approximately 40 individual doses with a street value of
approximately $400; (4) Officer Breen further testified that it was not typical for a
crack user to possess the quantity of cocaine found in the house, and, that the way that
the narcotics were already cut up indicated that it was for sale; and (5) Daniels
testified that appellant sold crack cocaine to him approximately 15 minutes before the
officers’ arrival at the house. 
          Based upon the record presented, we conclude that a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Taylor,
10 S.W.3d at 685. Accordingly, we hold the evidence was legally sufficient to
support appellant’s conviction.
          We overrule appellant’s point of error.
Jury Argument
The State’s Comment on Appellant’s Right Not to Testify
          Appellant contends that the trial court erred in failing to grant a mistrial when
the State, in its closing guilt/innocence argument, commented on appellant’s silence. 
The denial of a motion for mistrial is reviewed under an abuse-of-discretion standard. 
Trevino v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). 
          Neither the trial court nor the prosecutor may comment on the defendant’s
failure to testify. Bustamante v. State, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). 
Such a comment violates the privilege against self-incrimination and the freedom
from being compelled to testify contained in the United States Constitution


 and the
Texas Constitution.


 
          Appellant asserts that, during the State’s jury argument, the prosecutor made
repeated references to appellant’s silence. More specifically, appellant complains of
the following comments made by the prosecutor during the State’s closing argument
at the guilt/innocence phase: 
STATE: They’re all felons. They’re all drug users or dealers. That’s
the type of people that Mr. Oliver is hanging out with. But he would
like you to believe that —
 
DEFENSE TRIAL COUNSEL: Judge, I would like to object to any
statement about Mr. Oliver would like anyone to believe.
 
TRIAL COURT: Sustained. Disregard that, members of the jury. 
That’s totally improper. Don’t consider that for any purpose whatsover
in this trial.
 
DEFENSE TRIAL COUNSEL: Ask for a mistrial.
 
TRIAL COURT: Denied.
 
STATE: He’s hanging out with three felons on that day. It is
absolutely his right not to testify. But you can also consider the type of
people that are with him.
 
DEFENSE TRIAL COUNSEL: Judge, I’ll object to her commenting
on his right not to testify.
 
TRIAL COURT: Sustained. Disregard that comment, members of the
jury. Do not consider it at all in the determination of this case.
 
DEFENSE TRIAL COUNSEL: Request a mistrial.
 
TRIAL COURT: Denied.
 
          The only statement in the above exchange that could be construed as a comment
regarding appellant’s silence is the prosecutor’s statement that “[i]t is absolutely his
right not to testify.” At trial, appellant objected to the State’s remark on the basis that
it commented on appellant’s right not to testify. In his brief, appellant complains that
it is a clear reference to his silence at trial. 
          The complained-of comment was a recognition that appellant possessed a right
not to testify, as distinguished from cases in which the State comments negatively on
a defendant’s failure to testify. See Fuentes v. State, 991 S.W.2d 267, 275 (Tex. Crim.
App. 1999). In Fuentes, during the State’s argument at punishment phase, the
prosecutor commented that “[w]e respect [appellant’s] right to remain silent and we’ve
done that and we’re continuing—.” Id. Fuentes’s objection to this comment was
sustained, and the jury was instructed to disregard the comment, but his motion for
mistrial was denied. Id. The Court of Criminal Appeals affirmed, opining that, to the
extent such comment could be construed as commenting on the defendant’s failure to
testify, it was not so inflammatory that any prejudicial effect could not have been
removed by the trial court’s instructions to disregard the remark. Id. Likewise, here,
the State’s comment referencing appellant’s right not to testify was not so
inflammatory that any prejudicial effect could not have been cured by the trial court’s
instruction to disregard the comment. 
          Accordingly, we overrule appellant’s point of error.
Appellant’s Rule 404 Objection to Jury Argument
          Appellant also contends that the trial court erred in allowing the State to argue
that appellant should be convicted based on the character of the “company that he
keeps.” 
          In addition to the argument discussed previously, the State further argued that,
“[i]t’s sometimes said that you can judge the character of a person by the company
that he keeps.” At trial, appellant objected on the basis that the State’s comment was
“improper argument under rule 404,” and the trial court overruled his objection. See
Tex. R. Evid. 404. Assuming without deciding that the trial court erred, we conclude
that such error, if any, was harmless. See Tex. R. App. P. 44.2 (regarding reversible
error in criminal cases). 
          Generally, most comments that fall outside the areas of permissible jury
argument will be considered to be non-constitutional error under rule 44.2. Martinez
v. State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) (citing Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998)); see also Wesbrook v. State, 29 S.W.3d 103,
115 (Tex. Crim. App. 2000) (delineating the four permissible areas of jury argument:
(1) summation of the evidence, (2) reasonable deductions from the evidence, (3)
answers to the argument of opposing counsel, and (4) pleas for law enforcement.). 
Accordingly, we apply the harm analysis for nonconstitutional errors. Martinez, 17
S.W.3d at 692. 
          Rule 44.2(b) provides that a non-constitutional error that does not effect
substantial rights must be disregarded. Id; see also Washington v. State, 16 S.W.3d
70, 73 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d) (a substantial right is affected
when the error had a substantial and injurious effect or influence in determining jury’s
verdict) (citation omitted). In determining whether improper jury argument was
harmful, we look to three factors: (1) the severity of the misconduct (the magnitude
of the prejudicial effect of the prosecutor’s remarks), (2) measures adopted to cure the
misconduct (the effect of any cautionary instruction by the judge), and (3) the certainty
of conviction absent the misconduct (the strength of the evidence supporting the
conviction). Mosley, 983 S.W.2d at 259. 
          We utilize the Mosely test to analyze the State’s argument; specifically, the
statement that “It’s sometimes said that you can judge the character of a person by the
company he keeps.” Under the first Mosley factor, we consider the severity of the
misconduct, if any. Id. The State argues that the prosecutor’s comment constituted
a reasonable deduction from the evidence, and, that the prosecution was properly
urging the jury to use common sense in their deliberation process. We are to afford
the prosecution a wide degree of latitude in drawing reasonable deductions from the
evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered
in good faith. Shannon v. State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); Gaddis
v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). 
          The evidence revealed that, on the date of appellant’s arrest, three convicted
felons were present in the house, along with appellant. All three individuals testified
regarding their prior felony convictions. Further, on three other occasions during the
State’s closing argument, the prosecutor commented, without objection, that appellant
was in the presence of three felons on the date he was arrested. Based on the record
as a whole, we conclude that this lone statement did not constitute severe misconduct,
was a deduction from the evidence, and did not have a prejudicial effect on the jury.
          Under the second Mosely factor, we consider the effect of any cautionary
instruction by the trial court. Id. The record shows that the trial court overruled
appellant’s objection, and, therefore, no curative measures were adopted. However,
under these facts, we conclude that this factor carries little weight in our analysis. 
          Finally, under the third Mosely factor, the evidence supporting the jury’s verdict
was strong, and the certainty of his conviction, absent the alleged misconduct, was
high. We conclude that, given the mildness of the State’s comment and the strength
of the evidence supporting appellant’s conviction, any error associated with the State’s
comment was harmless. Martinez, 17 S.W.3d at 694. We overrule appellant’s point
of error. 
Identity of the Confidential Informant
          Finally, appellant contends that the trial court erred in denying his motion for
new trial because the State, prior to trial, made a material misrepresentation to the trial
court and to appellant regarding the identity of the confidential informant. We review
a trial court’s denial of a motion for new trial for abuse of discretion. Salazar v. State,
38 S.W.3d 141, 148 (Tex. Crim. App. 2001). The trial court is given great deference,
and may be overruled only if its decision is arbitrary or unreasonable. Lewis v. State,
911 S.W.2d 1, 7 (Tex. Crim. App. 1995). The trial court has broad discretion in
judging the credibility of the witnesses and in weighing the evidence to determine
whether a different result would occur upon retrial. Dusenberry v. State, 915 S.W.2d
947, 949-50 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d).
          Here, appellant asserts that the State misrepresented the identity of the
confidential informant at the pretrial hearing, and that, because appellant relied on the
State’s misrepresentation in preparing and presenting his case, appellant should be
granted a new trial. The record, however, does not support appellant’s contention. 
What appellant purports to be a material misrepresentation by the State as to the
identity of the confidential informant is, at most, an injudicious remark delivered in
reaction to conjecture by co-defendant Daniels’s counsel regarding the confidential
informant’s identity. Further, the testimony that appellant cites as evidence of the
alleged misrepresentation, fails to support his assertion. 
          The record shows that appellant and his co-defendant Daniels filed a combined
pretrial motion for the discovery of the name of the confidential informant. During
the pretrial hearing on the motion, Daniel’s trial counsel, Ms. Melontree, told the trial
court that she “fe[lt] strongly that Mr. [Julian] Nelson was the informant,” and
offered into evidence an application for the subpoena of Nelson. In pertinent part, the
following exchange subsequently transpired:
STATE: Judge, our position is that [appellant’s trial counsel] didn’t
establish that the defendant or that the C[onfidential] I[nformant] was at
the scene on December 14th. I’d ask the Court to take judicial notice of
the fact that the offense occurred on December 14th. There has been
[sic] showing by defense that the CI was actually at the scene or could
provide any material evidence. On that basis, the motion should be
denied. However, Ms. Melontree has now provided the Court and
everybody else notice as to whom the CI is. So the motion is now moot. 
So, I’m going to ask you to deny it on that basis for her client. 
 
TRIAL COURT: All right. Last words, [appellant’s counsel].
 
APPELLANT’S TRIAL COUNSEL: Based on the representations, I
would just like to know if the information in Ms. Melontree’s application
for subpoena has the correct address. Or if the telephone number is
available, we’d like that telephone number as well.
 
TRIAL COURT: Do you know any more than Ms. Melontree knows?
 
STATE: No, sir.
 
TRIAL COURT: The subpoena is now part of the evidence in this
record. . . . As to the form of the motion, it’s denied in each case.
 
          After his conviction, appellant filed a motion for new trial, alleging, in pertinent
part, that his conviction was based in part upon a misrepresentation by the State as to
the identity of the confidential informant.


 In a sworn affidavit offered in support of
appellant’s motion for new trial, appellant’s counsel misreported that, at the pretrial
hearing, “the representative of the state [sic] of Texas said that the informant was
Julian Nelson.”


 Warren Diepraam, the prosecutor who represented the State during
the pretrial hearing, filed a sworn affidavit in response to appellant’s motion,
reporting, in pertinent part: 
                                    The officers never informed me of the identity of the informant. As such,
I had no reason to disbelieve Ms. Melontree’s allegations that Julian
Nelson was the informant. I never attempted to confirm or deny whether
Mr. Nelson was the informant, because he was not present at the time the
search warrant was executed. 
 
After consideration of the arguments and affidavits from both sides, the trial court
denied appellant’s motion.


 
          Giving great deference to the trial court, we find nothing in the record to
indicate that the trial court’s decision was either arbitrary or unreasonable. Lewis, 911
S.W.2d at 7. Appellant had the burden of proof on his motion for new trial. Patrick
v. State, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995). As evidence, appellant offered
the sworn affidavit of his trial counsel, which alleged that appellant was harmed by the
State’s “apparent misrepresentation” regarding the identity of the confidential
informant. As proof of the alleged misrepresentation, appellant’s trial counsel attested
that, on the same day HPD Officer Breen testified that the confidential informant had
not been in the courtroom, Nelson, in fact, had been in the courtroom.
          A careful review of the record, however, reveals that there is no way to ascertain
exactly what time Nelson entered the courtroom on the day in question.


 Thus, we do
not construe Breen’s statement as testimony that Nelson was not the confidential
informant. Nor do we construe the prosecutor’s comments to be a material
misrepresentation regarding the identity of the confidential informant. See Janecka
v. State, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996) (to prove a material
misrepresentation in a probable cause affidavit, a defendant must establish by a
preponderance of the evidence the existence of a falsehood, made knowingly,
intentionally, or with reckless disregard for the truth, and, that it was material to
proving probable cause) (citing Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674
(1978)). Furthermore, it was within the sole discretion of the trial court to judge the
credibility of the affiants and to weigh the evidence to determine whether a different
result would occur upon retrial. Dusenberry, 915 S.W.2d at 949-50. We will not
substitute our judgment for that of the trial court. Salazar, 38 S.W.3d at 148. 
          Accordingly, we overrule appellant’s point of error. 
CONCLUSION
          We affirm the judgment of the trial court. 
          
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Higley.
Do not publish. Tex. R. App. P. 47.2(b).